UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-cv-00359

ARTIS ANDERSON                                                                                      PLAINTIFF

v.

KENTUCKY ONE HEALTH, INC., *et. al.*                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *pro se* Plaintiff Artis Anderson's ("Plaintiff") Motion for a Temporary Restraining Order ("TRO"). [DN 22.] For the reasons discussed below, Plaintiff's Motion is **DENIED**.

## I. BACKGROUND

The subject of Plaintiff's Motion is the alleged violation of "Plaintiff's rights under federal law and under the United States Constitution," and the loss of guardianship of Ms. Mary Ellen Reynolds ("Ms. Reynolds"), as well as the annulment of his marriage to her. [DN 22-2-3.] In a 2015 proceeding in Woodford County District Court, the Cabinet for Health and Family Services, Guardian Services Branch, ("CHFS"), was appointed as Ms. Reynolds' guardian, "following a jury determination that Ms. Reynolds was wholly disabled in managing her personal affairs and financial resources." [DN 7-33] On March 28, 2016, the Jessamine County Family Court entered judgment in a case between Ms. Reynolds and Plaintiff, annulling the brief marriage between them. [*Id.*] The pair had initially been married on May 11, 2015 in Woodford County, Kentucky. [*Id.*] In annulling the marriage between Ms. Reynolds and Plaintiff, the Jessamine County Family Court noted that Ms. Reynolds' primary care physician, Dr. Thomas Coburn, had serious concerns regarding Ms. Reynolds' mental health in 2014, but that on May 11, 2015, Plaintiff and Ms. Reynolds went to the Woodford County Clerk's Office and obtained

1

a marriage license. [DN 7-34.] Multiple individuals from the Clerk's Office testified to Ms. Reynolds' state as "disheveled" or in "disarray." [*Id.*] Thereafter, Ms. Reynolds' mental state was a point of constant concern, which led the Jessamine County Family Court to rule that Ms. Reynolds lacked the capacity to effectively consent to marrying Plaintiff, and was thus a nullity. [DN 7-37.] Plaintiff vehemently contests both the transfer of guardianship to the CHFS as well as the annulment of his marriage to Ms. Reynolds. These two issues, along with Plaintiff's assertions that Defendants have violated his federal statutory and Constitutional rights, comprise the heart of his present Motion.

## II. STANDARD

In determining whether to grant a temporary restraining order, courts must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a [TRO], (3) whether granting the [TRO] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [TRO]."*Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These factors are "factors to be balanced and not prerequisites that must be satisfied." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id.* (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 102 (6th Cir. 1982)). The district court's decision to grant or deny a TRO is reviewed for abuse of discretion. *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Beacon J. Publ'g Co., Inc. v. Blackwell,* 389 F.3d 683, 684 (6th Cir. 2004)).

## III. DISCUSSION

### A. Likelihood of success on the merits

The first factor, the likelihood of success on the merits, is the principal consideration for courts when determining whether a TRO is warranted. The Sixth Circuit has noted that, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997) ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.")). That is precisely the situation in this case, where this Court can discern no likelihood whatsoever that Plaintiff will succeed on the merits of his claims. To be sure, Plaintiff has made many claims against Defendants, alleging violations of 18 U.S.C. § 1346,[1] "22 U.S.C. § 7201(b)(8),"[2] 42 U.S.C. §§ 1983, 1985, violations of "at least five (5) Kentucky state statutes,"[3] and other allegations of "Medicare fraud," "embezzlement," "theft" and more. [*See* DN 6.] Notwithstanding that fact, Plaintiff has not demonstrated in any filing "a strong likelihood of success on the merits" with respect to any of those claims, which is the touchstone of any motion for a TRO. *See Brunner*, 543 F.3d at 361.

For example, in *ACLU Fund of Michigan v. Livingston Cnty.*, 796 F.3d 636, 648-49 (6th Cir. 2015), the Sixth Circuit Court of Appeals found that the ACLU was likely to succeed on the merits of a Fourteenth Amendment procedural due process claim because the ACLU was able to actually *show* that a jail was "blocking delivery of the ACLU letters [to inmates] without providing the ALCU or the intended recipient notice and an opportunity to contest the decision."

---

[1] 18 U.S.C. § 1346 merely provides the definition of "scheme or artifice to defraud."
[2] 22 U.S.C. § 7201(b)(8) does not exist. Rather, Plaintiff seems to be referencing 22 U.S.C. § 7102(9).
[3] Plaintiff does not specify which five Kentucky statutes were violated.

Moreover, in that case, "Defendants conceded that if the ACLU letters…were, in fact, 'legal mail,' the Fourteenth Amendment procedural-due-process rights asserted by the ACLU apply." *Id.*

Conversely, Plaintiff merely presents vague assertions in this Motion with respect to the alleged federal statutory and Constitutional violations, asking for an injunction "prohibit[ing] the violation of any of the Plaintiff's rights under federal law and under the United States Constitution…by any state official, employee or any one [sic] acting under the color of state law…." [DN 22-2-3.] Plaintiff invokes all federal statutory and Constitutional law and all state employees, and has not presented any facts to show any likelihood of success on the merits of this case. While he has set forth numerous allegations in his Amended Complaint [DN 6] and in this Motion, [DN 22], the Court finds that this, without more, falls far short of warranting the issuance of a TRO. Concerning the guardianship and annulment issues Plaintiff raises in this Motion, he seeks a TRO in what appears to be a request to have the Jessamine County Family Court and Woodford County District Court decisions overturned. [DN 22-2-3.] The Court takes Plaintiff's concerns regarding the annulment of his marriage, as well as CHFS obtaining guardianship over Ms. Reynolds, very seriously, but Plaintiff has not produced any concrete factual basis concerning any wrongdoing by the named Defendants sufficient to satisfy this Court that he has a strong likelihood of success on the merits of this case. This factor weighs in favor of Defendants.

### B. Irreparable harm

The second consideration of whether a plaintiff will suffer an irreparable harm is a significant, and possibly determinative, factor in whether a court may grant a TRO or a preliminary injunction. *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105

(6th Cir. 1982). Additionally, "the harm alleged must be both certain and great, rather than speculative or theoretical." *State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). The injury must be of such imminence that there is a clear and immediate need for relief in order to prevent harm. *Wis. Gas. Co. v. Fed. Energy Regulatory Comm'n,* 758 F.2d 669, 674 (D.C. Cir. 1985). This factor, too, weighs in favor of denying Plaintiff's Motion for a TRO, because the Court is not persuaded that Plaintiff will suffer such irreparable harm in the absence of one. Indeed, the issues which Plaintiff raises are either too vague or speculative for the Court to determine with any degree of certainty that Plaintiff will, in the absence of the issuance of a TRO, suffer any irreparable harm, or do not present urgent matters that the Court feels would lead Plaintiff to suffer immediate and irreparable harm without the issuance of a TRO.

In his Motion, Plaintiff notes the issue of CHFS obtaining guardianship of Ms. Reynolds and the annulment of his marriage to her. [DN 22.] However, Plaintiff's Motion merely restates allegations already made in his Amended Complaint. [DN 6.] After reviewing these filings, along with Plaintiff's present Motion, the Court finds that there is nothing contained within the Motion that suggests that Plaintiff's need for relief is so immediate or, in the time since the filing of his Amended Complaint, has *become* so immediate, as to necessitate a TRO being granted at this time. Indeed, the guardianship decision regarding Ms. Reynolds was made in 2015, and the marriage was annulled on March 28, 2016. [DN 7-33, 40.] Plaintiff has pointed to nothing that has occurred since the entrance of those judgments by the Woodford County District Court and the Jessamine County Family Court, respectively, which would lead this Court to believe that the situation was so dire that Plaintiff would suffer immediate and irreparable harm if a TRO was not granted.

### C. Harm to others and the public interest

Under the third factor, it is unclear whether the granting of a TRO would or would not cause substantial harm to others. With regard to the fourth factor, Plaintiff does not address whether the public interest would or would not be served by the Court granting this motion. While it remains uncertain as to how the public interest would or would not be served by the grant or denial of this Motion, this Court is satisfied that the first two factors, taken together, weigh heavily in favor of Defendants and, as such, this Court denies Plaintiff's Motion for a TRO.

### IV. CONCLUSION

For the reasons discussed herein, Plaintiff's Motion for a Temporary Restraining Order is **DENIED.**

**IT IS SO ORDERED.**

cc: Artis Anderson, *pro se* Plaintiff
20 Buckner St.
Winchester, KY 40391

Defendants:

Chief Justice John D. Minton, Jr.
Supreme Court of Kentucky
State Capitol, Room 235
700 Capitol Ave.
Frankfort, KY 40601

Kathy R. Mangeot, District Judge
222 St. Clair St.
Frankfort, KY 40601

Office of the Attorney General
ATTN: Andy Beshear
700 Capitol Ave., Suite 118
Frankfort, KY 40601

Barnett Benvenuti & Butler, PLLC
ATTN: Holly Iaccarino
489 East Main St., Suite 300
Lexington, KY 40507

William Clouse, Jr., Circuit Judge
101 W. Main St., #4
Richmond, KY 40475

Jean Logue, Circuit Judge
101 W. Main St., #4
Richmond, KY 40475

United States Department of Justice
950 Pennsylvania Ave., NW
Washington D.C. 20530

Office of the United States Attorney
717 W. Broadway
Louisville, KY 40202