UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-CV-359-TBR

ARTIS ANDERSON, PLAINTIFF

v.

KENTUCKY ONE HEALTH, INC., et. al., DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Artis Anderson's ("Plaintiff") Motion for Preliminary Injunction. [DN 3.] Defendants Kentucky One Health, Inc. and the Kentucky Court of Justice, (collectively, "Defendants"), have responded. [DN 8; DN 10.] The time for Plaintiff to file a reply has passed. This matter is now ripe for adjudication. For the following reasons, Plaintiff's Motion is **DENIED.**

## I. BACKGROUND

Plaintiff filed the instant Motion alleging violations of "every Constitutional right that the Plaintiff has…." [DN 3, at 2.] Plaintiff argues that Defendants, among other individuals and organizations, conspired to act illegally, thereby violating his Constitutional rights, including the fundamental right to marry, as well as entering judgments that Plaintiff alleges are "void." [*See id.*] The impetus of Plaintiff's Motion appears to be the loss of guardianship over his then-wife, Mary Ellen Reynolds, ("Ms. Reynolds"), and the eventual annulment of that marriage by the Woodford County District Court. Plaintiff alleges that the Woodford County Emergency Medical Services ("Woodford EMS") were called to his home on May 18, 2015 (about one week after the couple's marriage) under the pretense of what Plaintiff refers to as a "welfare check," during which time Woodford EMS lied to Plaintiff, "falsely claiming that [Ms. Reynolds'] medical

condition was serious." [DN 3, at 1-2.] This episode is alleged by Plaintiff to be a "common scheme executed by predators seeking to steal money and property from elderly citizens." [*Id.* at 2.]

Thereafter, in a 2015 proceeding in Woodford County District Court, the Cabinet for Health and Family Services, Guardian Services Branch, ("CHFS"), was appointed guardian of Ms. Reynolds "following a jury determination that Ms. Reynolds was wholly disabled in managing her personal affairs and financial resources." [DN 7, at 33.] Woodford County District Court Judge Vanessa Dickson presided over that case. Plaintiff's Motion contends that Judge Dickson "violated at least five provisions of Kentucky's statutes which rendered her decision/judgment VOID per Kentucky's Supreme Court."[1] [DN 3, at 2.]

On March 28, 2016, the Jessamine County Family Court entered judgment in a case between Ms. Reynolds and Plaintiff, annulling the brief marriage between them. [DN 7, at 33.] In doing so, the Jessamine County Family Court noted that Ms. Reynolds' primary care physician, Dr. Thomas Coburn, had serious concerns regarding Ms. Reynolds' mental health in 2014, but that on May 11, 2015, Plaintiff and Ms. Reynolds went to the Woodford County Clerk's Office and obtained a marriage license. [*Id.* at 34.] Multiple individuals from the Clerk's Office testified to Ms. Reynolds' state as "disheveled" or in "disarray." [*Id.*] Thereafter, Ms. Reynolds' mental state was a point of constant concern, which led the Jessamine County Family Court to rule that Ms. Reynolds lacked the capacity to effectively consent to marrying Plaintiff, and the marriage was thus declared a nullity. [*Id.* at 37.] These allegations provide the backdrop for Plaintiff's instant Motion, wherein he concludes by arguing that he "is entitled as a matter of law to an injunction against the Commonwealth of Kentucky, [its] agents, officials, and

---

[1] Plaintiff does not identify which five Kentucky statutes Judge Dickson allegedly violated, nor does he expand upon the relationship between the alleged statutory violations and the Kentucky Supreme Court.

employees, and all other persons, to protect and enforce his Constitutional rights…." [DN 3, at 4.]

## II. STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In reaching a decision as to whether a preliminary injunction should be granted, there are four factors of particular import: "(1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served." *Int'l Longshoremen's Ass'n, AFL-CIO, Loc. Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). The Court examines each factor separately and balances them, "mak[ing] specific findings concerning each of the four factors, unless fewer are dispositive of the issue." *Id.* Notably, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

The principal consideration for courts when determining whether to grant a preliminary injunction is the movant's likelihood of success on the merits. Indeed, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997) ("[A] preliminary

injunction issued where there is simply no likelihood of success on the merits must be reversed.")). The Court finds that Plaintiff has not presented any evidence tending to show any likelihood of success on the merits of this case. To be sure, he makes many allegations concerning what he believes to be the unlawful annulment of his marriage and the unlawful manner in which CHFS obtained guardianship over Ms. Reynolds, but he does not provide support in the form of evidence. Plaintiff avers that Judge Dickson issued a "void judgment" with respect to the guardianship issue, made false claims in court, and violated "at least five provisions of Kentucky's statutes," but does not apprise the Court of which statutes were violated, how they were violated, or evidence showing that they were actually violated.

Plaintiff's additional arguments consist of sweeping allegations, such as "[t]wo Circuit Judges have entered judgments against the Plaintiff predicated on Judge Dickson's VOID judgments and under circumstances, these judges violated 18 USC § 1589." [DN 3, at 3.] 18 U.S.C. § 1589 is the federal Forced Labor statute, containing a prohibition on obtaining labor or services from an individual through means such as force, physical restraint, abuse, and threats. Plaintiff does not explain how this statute applies to this case, or how or when specifically these unnamed judges violated that statute. While the Court is sensitive to the fact that Plaintiff's marriage was annulled, and that CHFS was appointed guardian, these two facts, without any evidence tending to show that the actions were taken illegally, are insufficient to show any likelihood of success on the merits. This factor weighs in favor of Defendants.

**B. Irreparable Injury**

The irreparable injury requirement is a significant, and possibly determinative, factor in whether a court may grant a preliminary injunction. *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir. 1982). "[T]he harm alleged must be both certain and

great, rather than speculative or theoretical." *State of Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). This means that the injury must be of such imminence that there is a clear and immediate need for relief in order to prevent harm. *Wis. Gas. Co. v. Fed. Energy Reg. Comm'n,* 758 F.2d 669, 674 (D.C. Cir. 1985). Plaintiff's Motion fails to provide the Court with evidence showing "a clear and immediate need for relief, *see id.*, instead merely relying on sweeping allegations regarding past harms he has allegedly suffered. It is unclear to the Court how the grant of a preliminary injunction at this time would remedy Plaintiff's past issues, nor does Plaintiff actually contend that he will suffer irreparable injury if the Court elects *not* to issue one. In sum, the Plaintiff does not allege, and the Court does not find, that any certain and great injury will befall Plaintiff if the Motion is not granted. This factor weighs in favor of Defendants.

### C. Harm to Others & the Public Interest

As identified above, the final two factors for consideration are (1) whether the grant of a preliminary injunction would do harm to others, and (2) whether the public interest would be served through the grant of one. *Int'l Longshoremen's Ass'n*, 927 F.2d at 903. In his Motion, Plaintiff did not identify any of the four factors listed above in Section II, and so did not address the issues of harm to others and the public interest. While it is unclear as to whether the grant of a preliminary injunction would do harm to others, it does not appear that a grant would serve the public interest. Indeed, Plaintiff calls for an injunction "against the Commonwealth of Kentucky, it[s] agents, officials, and employees, and all other persons…." [DN 3, at 4.] Such a broad, sweeping injunction would likely do more harm to the public interest than good. This, coupled with the fact that both the "likelihood of success on the merits" and "irreparable injury" prongs

of the four-part test weigh heavily in favor of Defendants, leads this Court to conclude that Plaintiff's Motion must be denied.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Preliminary Injunction, [DN 3], is **DENIED**.

**IT IS SO ORDERED**.

cc: Counsel of Record

    Artis Anderson, *pro se* Plaintiff
    20 Buckner St.
    Winchester, KY 40391